STEVEN W. MYHRE
Acting United States Attorney
CRISTINA D. SILVA
Assistant United States Attorney
Nevada State Bar # 13760
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
FAX: (702) 388-5087
cristina.silva@usdoj.gov

Attorneys for the United States of America

FILED ___ ENTERED ___ RECEIVED ___ SERVED ON COUNSEL/PARTIES OF RECORD
AUG - 1 2017
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>            v.<br><br>BRIAN JOHNSON (aka Iordan Arabadieu),<br><br>                  Defendant. | 2:10-cr-00216-APG-VCF<br><br>**PLEA AGREEMENT** |

The United States, by and through the undersigned, and the Defendant, BRIAN JOHNSON (aka Iordan Arabadieu), and his attorney, OSVALDO FUMO, Esq., respectfully submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B).

**I.      SCOPE OF AGREEMENT**

The parties to this Plea Agreement are the United States and the Defendant, BRIAN JOHNSON (aka Iordan Arabadieu). This Plea Agreement binds the Defendant and the United States Attorney's Office for the District of Nevada. It does

not bind any other prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, restitution, and forfeiture. It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the Defendant.

**II.   DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS**

A.   <u>Guilty Plea</u>. The Defendant knowingly and voluntarily agrees to plead guilty to the following count contained in the Indictment filed on May 18, 2010:

<u>Count 1</u>: Conspiracy to Commit Fraud and Related Activity in Connection with Access Devices, in violation of Title 18, United States Code, Section 1029(b)(2); and Count 2, Use or Trafficking in Unauthorized Access Device, in violation of Title 18, United States Code, Section 1029(a)(2)).

B.   <u>Waiver of Trial Rights</u>. The Defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the Defendant is giving up:

1.   The right to proceed to trial by jury on all charges, or to a trial by a judge if the Defendant and the United States both agree;

2.   The right to confront the witnesses against the Defendant at such a trial, and to cross-examine them;

   3. The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

   4. The right to testify in his own defense at such a trial if he so chooses;

   5. The right to compel witnesses to appear at such a trial and testify in the Defendant's behalf; and

   6. The right to have the assistance of an attorney at all stages of such proceedings.

 C. <u>Withdrawal of Guilty Plea</u>. The Defendant will not seek to withdraw his guilty plea after he has entered it in court.

 D. <u>Dismissal of Charges</u>. After the Court has adjudged a sentence in this case, the government will move to dismiss all remaining charges in the Indictment.

 E. <u>Additional Charges</u>. The United States agrees not to bring any additional charges against the Defendant arising out of the investigation in the District of Nevada that culminated in this Plea Agreement or for conduct known to the United States at the time of this Agreement.

### III. ELEMENTS OF THE OFFENSE

<u>Count 1</u>: The elements of Conspiracy to Commit Access Device Fraud and Related Activity, in violation of Title 18, United States Code, Section 1029(b)(2), are the following:

  1) beginning on or about April 20, 2009, and ending on or about May 26, 2009, there was an agreement between two or more persons to commit

at least one crime contained in 18 U.S.C. §1029(a);

2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3) one of the members of the conspiracy performed at least one overt act on or after April 20, 2009, for the purpose of carrying out the conspiracy.

Count 2: The elements of Production, Use, or Trafficking of Counterfeit Access Device, in violation of Title 18, United States Code, Sections 1029(a)(1) and (2), are the following:

1) the defendant knowingly used, produced, or trafficked in a counterfeit access device;

2) the defendant acted with intent to defraud; and

3) the defendant's conduct in some way affected commerce between one state and another state, or between a state of the United States and a foreign country.

IV.   FACTS SUPPORTING GUILTY PLEA

A.   The Defendant will plead guilty because he is, in fact and under the law, guilty of the crime charged.

B.   The Defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt. The Defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offense.

4

C. The Defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

D. The Defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

From a date unknown but no later than April 20, 2009, up to and including May 26, 2009, the defendants DIMITAR DIMITROV, ANGEL IORDANOV, DANAIL TCHANEV, BRIAN JOHNSON, and STEFAN GEORGIEV developed a scheme and artifice to defraud financial institutions insured by the Federal Deposits Insurance Corporation of money through the stealing of customers' financial account information and using the information to withdraw funds from financial institutions' Automatic Teller Machines (ATM).

The scheme and artifice defendants developed to steal customers financial account information is often times referred to as "skimming." The ATM skimming process is designed to allow the perpetrators, in this case the defendants, to capture a victim's bank account number and personal identification number (PIN). These two pieces of information are the same two pieces of information a bank would require a regular customer to present to conduct a transaction at an ATM. Once the defendants captured a victim's account number and PIN information, the defendants manufactured a counterfeit debit card that could be used at any bank ATM to withdraw money from the victim's bank account. In manufacturing counterfeit debit cards, defendants first installed a skimming device on one or more of a bank's ATMs

to capture customers' account number. A skimming device is a device that reads and stores the information contained on the magnetic strip of a debit or credit card, which includes the customer's account number. The skimming device would have had to be placed; over the ATM's card reader, where a customer would normally insert his or her debit card during an ATM transaction. When an unsuspecting customer inserted his or her debit card into the ATM, the skimming device captured all of the customers' account information contained on the magnetic strip of the debit card and the device stored the information on a memory module along with the date and time of the transaction.

The defendants also took steps to capture a victim customer's personal identification number or PIN. Generally, the defendants were capable of using two possible methods to capture victims' PINs: In the first method, the defendants fabricated a piece of plastic, that was painted to match the color of the targeted ATM. The piece of plastic was hollowed out in order to conceal a covert camera and a power supply. A pin-sized hole was drilled into the plastic to keep the camera lens from being obstructed. The piece of plastic was attached to the top of the ATM, with adhesive, and positioned to give the covert camera a view of the ATM's PIN pad. This allowed the camera to capture each customer's PIN as it was typed into the ATM, using the ATM's PIN pad. The video recorded by the covert camera was stored on a memory module along with the date and time of the transaction. In the second method, defendants would replace the ATM's PIN pad with a PIN pad that conceals a "key logger." In this method, the "key logger" recorded the numbers associated with

the keys that were pressed on the ATM's PIN pad as the victim customer entered their PIN, along with the date and time of the transaction. Despite the aforementioned modifications, the targeted ATM would have continued to function normally and the customer would have had no way of knowing that his or her debit card and PIN information had been compromised. The defendants would return later to retrieve the skimming device and covert camera/key logger. During the final step of the process, the defendants matched the victim-customers' account numbers stored on the skimming device with the corresponding PINs stored on either the camera or key logger based on the date and time of the transactions. The defendants then use computer and a re-encoding device to write the victim customers' account information onto a plastic card that contains a magnetic strip, in particular gift cards. The defendants would typically write the PIN for the corresponding account on a decal and affix the decal to the counterfeit debit card so the defendants could keep track of which PIN went to which account or debit card.

Once the counterfeit debit cards were created, the defendants used the counterfeit debit cards at various ATMs in or around Las Vegas and Henderson, Nevada, and Mesa, Arizona, and other locations to withdraw money from the victim customers' checking and/or savings accounts, creating a financial loss to the victims and/or the financial institutions.

On April 20, 2009, starting at approximately 4:08 p.m., and continuing for approximately 30 minutes, ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV were observed conducting multiple transactions, on a rotating basis, from

the walk-up ATMs of the Wells Fargo branch located at 900 North Green Valley Parkway, Henderson, Nevada, and the Bank of America branch located at 1100 North Green Valley Parkway, Henderson, Nevada.

On April 20, 2009, at approximately 4:56 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the Bank of America branch, located at 2798 Green Valley Parkway, Henderson, Nevada and for approximately 20 minutes, ANGEL IORDANOV and either BRIAN JOHNSON or DANAIL TCHANEV conducted multiple ATM transactions from the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 5:26 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the CitiBank branch, located at 2891 North Green Valley Parkway, Henderson, Nevada, and for approximately 15 minutes conducted multiple ATM transactions from the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 5:47 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAILTCHANEV arrived at the Wells Fargo branch, located at 2420 East Sunset Road, Las Vegas, Nevada, and for approximately 5 minutes ANGEL IORDANOV and either BRIAN JOHNSON or DANAIL TCHANEV conducted multiple ATM transactions at the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 6:01 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the Wells Fargo Bank located at 2231 North Green Valley Parkway, Henderson, Nevada and for approximately 15

minutes conducted multiple ATM transactions from the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 6:23 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV, for approximately 15 minutes, conducted multiple ATM transactions, on a rotating basis, from the walk-up ATMs of the Wells Fargo branch, located at 900 North Green Valley Parkway and the Bank of America branch, located at 1100 North Green Valley Parkway.

On April 20, 2009, at approximately 6:46 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the Bank of America branch, located at 2798 North Green Valley Parkway and for approximately 20 minutes conducted multiple transactions from the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 7:13 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the CitiBank branch, located at 2891 North Green Valley Parkway and for approximately 10 minutes conducted multiple transactions from the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 7:31 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the Wells Fargo branch, located at 2420 East Sunset Road and for approximately 9 minutes conducted multiple transactions at the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 7:49 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the Wells Fargo branch located

9

at 2231 North Green Valley Parkway and for approximately 10 minutes conducted multiple ATM transactions, on a rotating basis, at the bank's walk-up ATM.

On April 20, 2009, at approximately 8:15 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV for approximately 11 minutes conducted multiple ATM transactions, on a rotating basis, from the walk-up ATMs of the Wells Fargo branch, located at 900 North Green Valley Parkway, and the Bank of America branch, located at 1100 North Green Valley Parkway.

On April 20, 2009, at approximately 8:33 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the Bank of America branch located at 2798 Green Valley Parkway and for approximately 17 minutes conducted multiple ATM transactions at the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 8:54 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the CitiBank branch, located at 2891 North Green Valley Parkway and for approximately 15 minutes conducted multiple transactions from the bank's walk-up ATM, on a rotating basis.

On April 20, 2009, at approximately 9:24 p.m., ANGEL IORDANOV, BRIAN JOHNSON, and DANAIL TCHANEV arrived at the Bank of America branch, located at 4795 South Maryland Parkway, Las Vegas, Nevada and for approximately 18 minutes conducted multiple transactions from the bank's walk-up ATM, on a rotating basis.

On May 5, 2009, at approximately 5:52 p.m., ANGEL IORDANOV, BRIAN JOHNSON, DANAIL TCHANEV, and STEFAN GEORGIEV arrived at the Wells

Fargo walk-up ATM, located at 6111 West Tropicana Avenue, Las Vegas, Nevada and for approximately 13 minutes, DANAIL TCHANEV, ANGEL IORDANOV and GERRGIEV conducted multiple transactions at the ATM.

On May 5, 2009, at approximately 6:10 p.m., ANGEL IORDANOV, BRIAN JOHNSON, DANAIL TCHANEV, and STEFAN GEORGIEV arrived at the Self Storage City, located at 6740 West Flamingo Road.

The Defendant admits that all of the foregoing took place in the State and Federal District of Nevada, and elsewhere.

The Defendant also admits that the loss amount, as a result of his conduct, was more than $150,000 but less than $250,000.

## V. COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the Defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the Defendant does not plead guilty or withdraws his guilty plea, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument, or representation offered by or on the Defendant's behalf. The Defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI. APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A. <u>Discretionary Nature of Sentencing Guidelines</u>. The Defendant acknowledges that the Court must consider the United States Sentencing Guidelines

("USSG," "Sentencing Guidelines," or "Guidelines") in determining the Defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B. <u>Offense Level Calculations</u>.

1. <u>Counts 1-2</u>: The parties stipulate to the following calculation of the Defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements, variances, or reductions under the Sentencing Guidelines:

| | |
|---|---|
| Base offense level (USSG §2B1.1) | 6 |
| **Special Offense Characteristics** | |
| Loss Greater than $250,000, More than $150,000 (USSG § 2B1.1(b)(1)(F)) | +10 |
| Use of Unauthorized Device/Device-Making Equipment (USSG § 2B1.1(b)(11)) | +2 |
| Sophisticated Means/Relocation to Another Jurisdiction/Substantial Part of Scheme Outside United States (USSG § 2B1.1(b)(10(A)-(C)) | +2 |
| **Adjusted Offense Level** | **20** |
| Acceptance of Responsibility (USSG §§ 3E1.1(a) and (b)) | -3 |
| **Total Offense Level** | **17** |

The Defendant acknowledges that the statutory maximum sentence and any

12

statutory minimum sentence limit the Court's discretion in determining the Defendant's sentence notwithstanding any applicable Sentencing Guidelines provisions.

  C. <u>Reduction of Offense Level for Acceptance of Responsibility</u>. Under USSG § 3E1.1(a), the United States will recommend that the Defendant receive a two-level downward adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

  Under USSG §3E1.1(b), the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the Defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources. These Sentencing Guidelines provisions, if applied, will result in an adjusted offense level of 17, as depicted above.

D. <u>Criminal History Category</u>. The Defendant acknowledges that the Court may base its sentence in part on his criminal record or criminal history and that the Court will determine the Defendant's Criminal History Category under the Sentencing Guidelines.

E. <u>Relevant Conduct</u>. The Court may consider all relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F. <u>Additional Sentencing Information</u>. The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the Defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the Defendant to withdraw his guilty plea.

The parties agree that neither party will argue for additional adjustments, enhancements, variances, or departures from the Sentencing Guidelines range stipulated above. The Defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The Defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and/or makes other sentencing determinations as appropriate, and that the Court's reliance on such information

shall not be grounds for the Defendant to withdraw his guilty plea.

As a further part of this agreement, and as set forth more fully below, the parties intend that the government will argue for a sentence within the guidelines.

### VII. APPLICATION OF SENTENCING STATUTES

A. <u>Maximum Penalty</u>.

1. <u>Count 1</u>: The maximum penalty for Conspiracy to Commit Fraud and Related Activity in Connection with Access Devices, under 18 U.S.C. § 1029(b)(2) is 7.5 years' imprisonment, a fine of $250,000, or both.

2. <u>Count 2</u>: The maximum penalty for Use or Trafficking in Unauthorized Access Device under 18 U.S.C. § 1029(a)(2) is 10 years' imprisonment, a fine of $250,000, or both.

B. <u>Factors Under 18 U.S.C. § 3553</u>. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the Defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the Defendant's sentence.

C. <u>Parole Abolished</u>. The Defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

D. <u>Supervised Release</u>. In addition to imprisonment and a fine, the Defendant will be subject to a term of supervised release not greater than three (3) years. 18 U.S.C. §§ 3559(a)(1) and 3583(b)(1)). Supervised release is a period of time after release from prison during which the Defendant will be subject to various

restrictions and requirements. If the Defendant violates any condition of supervised release, the Court may order the Defendant's return to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum prison sentence.

E. <u>Special Assessment</u>. The Defendant will pay a $100 special assessment per count at the time of sentencing.

## VIII. RESTITUTION

In exchange for benefits received under this Plea Agreement, the Defendant agrees to make full restitution to any victims named in the judgment at the time of sentencing. 18 U.S.C. § 3663(a)(3). The Defendant cannot discharge his restitution obligation through bankruptcy proceedings. The Defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

## IX. POSITIONS REGARDING SENTENCE

The Government will recommend that the defendant be sentenced to a term of imprisonment within the applicable sentencing guideline range. The parties further jointly recommend that any sentence of imprisonment imposed by the Court run concurrently (that is, at the same time) between Counts 1 and 2. Finally, the parties jointly recommend that the defendant be given credit for the time he was arrested, detained, and ultimately incarcerated in Bulgaria on the international arrest warrant related to this case. He was arrested on the warrant on December 8, 2011. The Defendant acknowledges that the Court does not have to follow this

recommendation.

The defendant acknowledges that the Court does not have to follow that recommendation.

The defendant may request a sentence below the Sentencing Guidelines range as calculated in this Plea Agreement, and may seek a downward adjustment pursuant to 18 U.S.C. § 3553 or USSG § 4A1.3(b)(1) from any sentence the Court may impose.

This Plea Agreement does not require the United States to file any pre- or post-sentence downward departure motion under USSG § 5K1.1 or Fed. R. Crim. P. 35. The United States reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

## XI. FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, or upon request by the Court, the United States, or the Probation Office, the Defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets. The Defendant will release such funds and property under his control in order to pay any assessment and/or fine imposed by the Court.

## XII. THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A. <u>Plea Agreement and Decision to Plead Guilty</u>. The Defendant acknowledges that:

    1.    He has read this Plea Agreement and understands its terms and conditions;

2. He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

3. He has discussed the terms of this Plea Agreement with his attorney;

4. The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

5. He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The Defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial. The Defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

B. <u>Waiver of Appeal and Post-Conviction Proceedings</u>. The Defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The Defendant also knowingly and expressly waives all collateral challenges,

including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The Defendant reserves only the right to appeal any portion of the sentence that is an upward departure from the Sentencing Guidelines range determined by the Court.

The Defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

C. <u>Removal/Deportation Consequences</u>. The Defendant understands and acknowledges that if he is not a United States citizen, then it is highly probable that he will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The Defendant has also been advised that if his conviction is for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The Defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The Defendant acknowledges that he has specifically discussed these removal/deportation consequences with his attorney.

## XIII. ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable

concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the Defendant, the Defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

STEVEN W. MYHRE
Acting United States Attorney

8/1/17
DATE

CRISTINA D. SILVA
Assistant United States Attorney
Counsel for the United States of America

8·1·17
DATE

OSVALDO FUMO, ESQ.
Counsel for Defendant

8-1·17
DATE

BRIAN JOHNSON (aka Iordan Arabadieu)
Defendant

20